IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | |
| RODERICK BATTLE (1) and SAMORIA WALKER (10) | : | 1:23-CR-280-JPB-JSA |
| | : | |

# REPORT AND RECOMMENDATION

This case is before the Court on the Motions of Defendant Roderick Battle and Samoria Walker ("Defendants") to Sever Counts [307][451] for purposes of trial. Specifically, Defendants request that wire fraud-related counts in the Second Superseding Indictment (Counts 13 and 14) be severed and tried separately from the remainder of the drug trafficking charges. For the reasons explained below, the Court agrees and **RECOMMENDS** that Defendants' Motions to Sever [307][451] be **GRANTED**.

## A. BACKGROUND

The Second Superseding Indictment charges ten (10) Defendants with a total of fourteen (14) separate counts. The principal charge, Count One, is a wide-ranging conspiracy involving most of the Defendants, and others, over the course of at least approximately five years, and which alleges international trafficking of

large quantities of methamphetamine, cocaine, heroin and fentanyl. Although the Second Superseding Indictment alleges little specific detail, the record in this case includes numerous search warrants and evidentiary hearings that explain in more detail the long and intricate details of this allegedly extensive drug trafficking conspiracy. It is alleged that the lead Defendant, Battle, continued to direct this drug trafficking operation after his arrest and detention on these charges, through the use of cell phones illegally obtained and used while in detention.

Counts 1-12 of the Second Superseding Indictment allege conspiracy, specific acts of drug trafficking, use of guns in connection with these acts of drug trafficking, and money laundering regarding the proceeds of the drug trafficking operation. Defendant Walker is charged solely in Count 12 of these counts, which relates only to money laundering.

Counts 13 and 14 allege separate and substantially different schemes, based on alleged separate efforts by Defendants Battle and Walker to commit wire fraud to obtain money under false statements under the U.S. Government's post-Covid-19 Paycheck Protection Program ("PPP"). Count 13 charges Battle with falsifying a loan application under the PPP to a bank, in which he, in sum, allegedly falsely claimed to be operating a barber shop with a certain amount of supposed gross

income, which was affected by the Covid-19 crisis, and for which he needed a PPP loan to maintain operations and payroll. Sec. Super. Indictment [105] ¶¶ 25, 26. Count 14 alleges that Walker similarly made a false application to a bank for a PPP loan, based on false representations that she was operating a children's clothing business with a certain amount of revenue, and that she needed and would use the loan to maintain operations and payroll. *Id*. ¶¶ 35, 36.

Although the Indictment does not offer any details suggesting any connections between Battle's and Walker's separate PPP fraud schemes, and/or between either of those schemes and the drug trafficking offenses on which the rest of the case is focused, the Government's brief [436] proffers a few additional facts as to why these claims were joined. The Government proffers that Battle exchanged emails with Quantavious Smith, who is one of the Co-Defendants in some of the drug-related charges but is not charged in the wire fraud count, relating to the PPP scheme. The Government also represents that Walker, in applying for her PPP loan, submitted falsified versions of credit union account statements, which were from the same institution at which she engaged in acts of money laundering (albeit through a different account).

The Government also argues that evidence of the drug trafficking and/or

money laundering schemes is relevant to the PPP charges against each of the Defendants, as it tends to show that their income was not from the legitimate sources claimed in the PPP applications.

**B. DISCUSSION**

Where a Defendant seeks severance of counts in the same Indictment, the Court engages in a two-step inquiry: (1) whether joinder of the charges in one indictment is proper, pursuant to Federal Rule of Criminal Procedure 8(a); and (2) whether the joinder, if proper, nonetheless creates "compelling prejudice" against the defendant, pursuant to Federal Rule of Criminal Procedure Rule 14(a). *See United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002); *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993).

As to the question of initial joinder, an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The indictment also "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(a). When facts

underlying each offense are so closely connected that proof of such facts is necessary to establish each separate offense, joinder is permissible. *United States v. Castro*, 89 F.3d 1443, 1451-52 (11th Cir. 1996).

As noted, even if charges or defendants were permissibly joined under Rule 8, the Court is nevertheless to sever the trial if a defendant can demonstrate "specific and compelling prejudice" to his or her defense. *United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001) (internal marks omitted). "Compelling prejudice occurs when the jury is unable to separately appraise the evidence as to each defendant and render a fair and impartial verdict." *Id*. (internal marks omitted). Such prejudice may be demonstrated by showing that "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Blankenship*, 382 F.3d 1110, 1122-23 (11th Cir. 2004) (*quoting Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Courts must "balance any prejudice to the defendants against the interests of judicial economy [in trying counts and defendants together]." *Id.* at 1120 (internal citations omitted).

The PPP schemes in this case were clearly not of the same character as the drug offenses. It is also difficult to see that the fraud and drug offenses were part of

a "common scheme or plan." There are no facts proffered to suggest that lying to banks about running a barber shop, for example, is part of a common overarching criminal plan with an international drug trafficking conspiracy. The Government's main argument as to both Defendants, rather, appears to be that there is enough commonality of *evidence*, that is, enough acts and conduct relevant to each separate scheme to justify joinder.

As for Battle, the Government proffers that Defendant deposited the proceeds of his fraudulent barber shop PPP loan into a particular credit union account in June 2021. At that time, he communicated via email to Quantavious Smith to "check ppp again they just sent something to email," and Smith replied, "I just signed it you will have your money in a couple days." Gov't Br. [436] at 3. The Second Superseding Indictment named Smith as a Co-Defendant in the drug trafficking conspiracy, although there is no allegation or representation that Smith's act of "check[ing] ppp" and giving Battle "[his] [loan-related] money" in June 2021 was part of the drug scheme. The Government also represents that Defendant Battle made a single rent payment in 2023 for an alleged drug trafficking stash house out of this credit union account. There is no allegation that the fraud proceeds were traceable to the rent payment or any other aspect of the

drug trafficking operation.

As to Walker, the Government represents that she submitted a falsified version of a credit union account statement to a bank to support her PPP loan application in April 2021. According to the Government, Walker made payments beginning over a year later, in September 2022, as part of the money laundering scheme alleged in Count 12, from a *different account* at the same credit union in which she had previously received the PPP loan proceeds. Gov't Br. [436] at 3. There is no allegation or representation that the PPP loan proceeds were used as part of any money laundering transactions, or that the proceeds of any money laundering or drug transactions were passed off to any bank as supposed legitimate income as part of a PPP loan application.

The above circumstances do not show sufficient commonality of acts or conduct, or that proof of the PPP conduct is necessary to the drug or money laundering scheme or vice-versa. That at least one of the same individuals (Smith) may have assisted Battle with both separate schemes does not satisfy this showing, as it remains that the schemes are based on different acts. As for Walker, the mere use of different accounts at the same bank at different junctures in time—without more—also does not represent a "commonality" of acts or transactions as between

these two fundamentally different types of crimes.

As to both Defendants, the Government makes the highly general and conclusory argument that their financial records as a whole, including to show their receipt of illegal income, will be intertwined and relevant to the evidence of PPP fraud and vice-versa. The Court does not agree. Whether Battle was conspiring to traffic drugs does not appear to have any evidentiary interconnection with whether he lied about running a barber shop. Likewise, whether he actually ran a barber shop or not is not disproved by proof or allegations that he was also selling drugs. And there remains no allegation or representation that the money shown in any bank account statements that he may have passed off to the PPP lenders as supposed barber shop proceeds instead came from drug trafficking. As noted above, the only representation as to any connection between these schemes is that Defendant paid a single rent payment in 2023 out of the same account that had received PPP proceeds in 2021. There is no representation or proof that the PPP proceeds were present in the account as of 2023 or, regardless, whether there would be any evidentiary significance to the source of that deposit 2 years earlier.

The disconnect is even greater as to Walker. There is no allegation that she had been engaged in any drug or money laundering conduct as of when she applied

for her PPP loan in 2021, much less that the account statements she showed to the bank contained any illegal proceeds. Nor is there any allegation that she used the PPP proceeds in any way relevant to the money laundering scheme. Indeed, the Government's brief is careful to state that she used a *different* account for the two different schemes.

There could ultimately be some tangential and limited evidentiary connection between these different crimes. For example, Battle's ownership and control over the bank account in which he received fraud proceeds in 2021 and made a single rent payment in 2023 may be a common fact. But such connections are minimal at best and do not necessitate proof of most or any of the nature and details of the separate illegal schemes. For example, even if Battle's solitary rent payment in 2023 might help show, as part of the PPP case, that Battle owned that bank account, it would still not necessarily be relevant that that rental house was part of an international drug trafficking scheme spanning several years involving large amounts of methamphetamine, cocaine, heroin and fentanyl along with guns and money laundering. Any arguable commonality of a very small handful of facts is thus significantly dwarfed by the remainder of the very damaging and unrelated schemes unnecessary to each other. Thus, while the standard for joinder under

Rule 8 is permissive, the Court cannot find that the PPP charges were properly joined here. *See, e.g., United States v. Litwok*, 678 F.3d 208, 214 (2d Cir. 2012) (finding misjoinder as to the inclusion in one trial of charges of a mail fraud scheme and separate tax scheme that lacked evidentiary overlap).

Moreover, even if there was enough minimal thread of overlap to warrant initial joinder, the Court independently finds a great risk of compelling prejudice to both Defendants to try all of these counts in a single trial. As noted, any arguable connection would be vanishingly small as compared to the overwhelming bulk of unrelated and very damaging evidence in these two separate schemes.

Indeed, these two separate schemes would impugn Defendants' character in fundamentally different ways that could not normally be considered as to each other. *See generally United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976) ("[E]vidence of 'other crimes' which is relevant only to prove a criminal disposition is universally acknowledged to be inadmissible."); *United States v. Hawkins*, 776 F.3d 200, 2010-2011 (4th Cir. 2015) (finding prejudicial misjoinder where "Although the Government argues to the contrary, we do not find that all of the evidence on Count III and that on Counts I and II would have been mutually admissible under Rule 404(b) if Hawkins had enjoyed the benefit of separate trials.

Much of the evidence presented to the jury on Count III would have been only marginally relevant, if relevant at all, to Counts I and II. There was simply nothing about Hawkins being in possession of a different firearm in December that was related to any of the elements of the carjacking counts.")

The jury in assessing whether Battle defrauded banks and taxpayers, for example, would generally not be allowed to hear that Battle was a violent and dangerous drug trafficker. Likewise, in assessing whether Battle was running a drug distribution business, the jury would generally not hear (absent impeachment, Rule 404(b), or some other theory not facially evident or identified by the Government) that he also lied to banks for purposes of cheating taxpayers out of their money. Similar concerns apply to the unrelated charges against Walker. There is an obvious and serious possibility of distraction and that the jury would draw improper, prejudicial and irrelevant conclusions about Defendants' character, based on completely separate schemes.

At the same time, there is little efficiency to be gained by trying these unrelated schemes together. Battle's statements in his PPP loan application, and whether he owned a barber shop at the time that the Covid-19 crisis hit, would require substantially different facts than the proof of his drug trafficking, most of

which allegedly occurred after the PPP application. As for Walker, her alleged PPP loan application was more than a year prior to her money laundering transactions, and the Government acknowledged that she used different bank accounts for these two schemes. Joining all of this conduct in a single trial would only seem to expand the scope of that single trial and overly burden and confuse a single jury. It does not appear that severance would risk substantial duplication, since the Government has not explained how more than a small amount of evidence as to each scheme would be admitted in an individual trial properly focused on the other scheme.

**CONCLUSION**

The Court thus **RECOMMENDS** that the Motions [307][451] be granted and that Walker and Battle face separate trials specific to their fraud charges (Counts 13 and 14). This matter is **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 20th day of July, 2026.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE